Mr. Clement? Mr. Chief Justice, and may it please the Court, text, history, and tradition all make clear that New York City's restrictive premises license and accompanying transport ban are unconstitutional. The City's restriction on transporting firearms to places where they may be lawfully possessed, and its insistence in its right to enforce revised regulations that any such transport be continuous and uninterrupted are premised on a view of the Second Amendment as a homebound right, with any ability to venture beyond the curtilage with a firearm, even locked and unloaded, a matter of government grace. That view is inconsistent with text, history, tradition, and this That latter right makes clear that the Second Amendment protects rights that are not strictly limited to the premises. And there is no historical analog for the City's prohibition on transporting firearms to places where they may be lawfully used. To the contrary, the Second Congress required the militia to take their own firearms from their homes to the training ground. And the regulations on limiting where firearms may be discharged or where training may occur that the City invokes both underscore that the general rule was that firearms could be safely transported between and among places where they could be used and discharged. This Court recognized as much in Heller, both by recognizing the long history of handgun possession outside the home and by recognizing the government's interest in limiting possession in sensitive places, not every place outside the home. The City, of course, has struggled mightily ever since this Court granted certiorari to make this case go away. But those efforts are unavailing and only underscore their continuing view that the transport of firearms is a matter of municipal grace rather than constitutional right. The standard for mootness ---- Ginsburg. Mr. Clement, the City has now been blocked by a State law, and the State has not been party to these proceedings. The State says, City, thou shalt not enforce the regulations. So what's left of this case, the Petitioners have gotten all the relief that they sought. They can carry a gun to a second home. They can carry it to a fire, to a practice range out of State. Clement. So, Justice Ginsburg, the Petitioners have not gotten all the relief to which they'd been entitled if they prevailed in this litigation before the City and the State changed their law. I think the best way to illustrate that is if we'd prevailed in the district court before these changes in the law, we would have been entitled, of course, to a declaration that the transport ban is and always was unconstitutional, but we would also be entitled to an injunction that did three things. One, prohibit future enforcement of the transport ban. Second, prevent the City from taking past conduct in violation of the ban into account in licensing decisions. And third, an injunction that safeguard our right to transport meaningfully such that it wouldn't be limited to continuous and uninterrupted transport. Now, the State law as far as what you said about enforcing past violations, no plaintiff has alleged that they ever violated the regulations when they were in effect. That's actually not correct, Justice Ginsburg. If you look at paragraphs 12, 15, and 17 of the complaint, at pages 28 and 29 of the Joint Appendix, all three of the individual Petitioners allege that they regularly went outside the City of New York to firing ranges in outside of Westchester, basically, and in New Jersey. So all three of my clients are on the record as saying that in the past, they engaged in conduct that is inconsistent with the transport ban. And if you understand the way that the City of New York licenses handguns for Mr. Clement, I believe that the City has foresworn any future prosecution for past violations. I thought that that's the representation they made to this Court. Well, Justice Sotomayor, in their latest letter, they were very careful about what they represented. They represented that they wouldn't try to prosecute somebody from past conduct if that past conduct didn't violate the current regulations. So if the past conduct happened to involve a stop for coffee and not continuous and uninterrupted transport ban. Sotomayor, but that has to do with the current law, and that hasn't been decided by the Court below. That's something – that's a complaint about the limits of the Well, I don't think so, Justice Sotomayor. I think what I'm asking you to do is exactly what this Court did in the Knox case. No, Mr. Clement. What you're asking us to do is to take a case in which the other side has thrown in the towel and completely given you every single thing you demanded in your complaint for relief, and you're asking us to opine on a law that's not on the books anymore, and one that's not on the books, not because of something necessarily the city did, but because the State, a party who's not a party to this litigation, has changed the law and prohibited them from doing. So this is, I think, something quite different. You're asking us to opine on an old law, not the new law. And the new law hasn't been reviewed below yet. So, again, Justice Sotomayor, I really think what we're asking you to do is exactly analogous to what was before this Court in Knox. In Knox, the thrust of the underlying complaint was that the supplemental fee assessment that the union imposed on the members was unconstitutional. That's what the complaint framed. And then you know what you want now. In terms of the contiguous, we don't even know whether the city is taking the position that you can't stop for a cup of coffee. Presumably, if you leave your gun in the car, I'm not sure how they would know you were traveling with the gun. But put that aside. Well, so before I put it aside, let me just say, I think we do know the answer to that because in subsection 7 of the new regulations that they promulgated specifically to try to moot this case, they made clear that the kind of transport they were allowing, at least within the City of New York, had to be continuous and uninterrupted. I don't know what continuous and uninterrupted means if it doesn't – if it means that you can make stops for coffee. And I assure you, I think the right way to think about this for Article III purposes is if we had been successful in the lower court and proposed an injunction, I guarantee the words continuous and uninterrupted would not be in our proposed injunction. If the city had offered their proposed injunction and included that limitation, we would have said we don't accept that. We think that's inconsistent with the right that we just prevailed on. And that dispute would be a continuing dispute that would render the case not moot, just like in Knox there was a continuing dispute about the sufficiency of the refund notice that the union offered post certiorari in its effort to moot the case. The dispute that was still live between the parties about the sufficiency of the refund notice wasn't the exact same dispute that initiated the litigation, but the case was still a live controversy for Article III purposes, and this Court decided both the question presented and then also addressed the refund notice. Now, this Court could address the question presented here and leave the question of continuous and uninterrupted for the lower court if it wanted to, but there's no basis for not answering the question presented. So if I could go into that. Sotomayor, I'm sorry. That's the oddest decision I've heard. Answer an old law that's no longer in effect and then reserve consideration of the new law's interpretation for the lower courts? I don't know how that doesn't constitute mootness on the issue that's before us. If they've agreed, and you agree, that everything but the continuous and uninterrupted has been resolved and that you've gotten everything you wanted as demanded in your complaint, you can travel to a second home, you can travel to any lawful firing range, that's all your original complaint demanded. If you got all of that, that is the issue that was before us. A new question is whether, and you've agreed, we should leave that to the courts below, what continuous and uninterrupted is. That happens to go to the new law, not the old one. With respect, Justice Sotomayor, we don't think we've gotten everything that we could have gotten if we prevailed in the district court, including continuous and uninterrupted. But also, we would like, with all due respect, given our five years of history in this litigation with my friends on the other side, we'd like something more than their representations to protect us against the use in the future of past conduct in licensing disputes. I have one question. The SG tried to give you a lifeline by saying you could get damages. But I read your representations to court and you said we could get damages. I don't see a request for relief, either damages or nominal, in your complaint. And you don't say we want damages in your submissions to us. Did you ask for damages, nominal or? We asked for all other appropriate relief in our complaint. We did not make a specific request for damages below. I'm happy to affirm that we'd like damages, but I also think that, although we've got. You have to ask for permission to amend your complaint to seek that, don't you? We would have to do that. But with all due respect to the Solicitor General, we were happy that they recognized the case wasn't moot, but we didn't really feel like we needed a damages lifeline because we think we had multiple strong arguments based on this Court's precedence, including the Knox case, that said that wholly apart from a damages issue, this dispute isn't moot. So if I could turn to. Just one more on the damages. As far as I know, this Court has never used a late, meaning in this Court and not below, request for damages to save a case from mootness. I don't know of any such case. I'm not aware of one either, Justice Ginsburg. Perhaps my colleague from the SG's office will have one, since it was his suggestion. But we think we have plenty of cases from this Court that are analogous to this case. Indeed, with respect, I don't think the practice of getting the recognition after certiorari is granted that a certiorari grant may not signal anything good for the defendant, I mean, that's quite common practice that they then come up with an idea to moot the case. Just if you think of a couple of recent cases, not just Knox, but Trinity, Lutheran and parents involved, all involved late-breaking efforts, often by government entities, to make the case go away. In each case, this Court said, no, that's too little, too late. And if this Court starts accepting these kind of post-certiorari maneuvers, it's going to be very hard for the Court to continue to have this. Breyer. I mean, I don't think it's bad when people who have an argument settle their argument, and thus there no longer is one. So I wonder if, should I ask them this question? You say this case is still alive because the City of New York might prosecute one of your clients because they stopped for coffee on the way to a firing range. I think I'm going to ask them that, and I have a suspicion they will say, no, we aren't going to prosecute that particular individual. So then what should I do? Should I – we have a dispute. You think they will. They think they won't. Right. So that suggests to me that we have the kind of live controversy. And if the standard for mootness is whether it is possible to provide effectual relief, I guarantee an injunction backed by contempt that enforces those promises is going to give my clients more effectual relief. And do keep in mind, what makes this case quite different from a lot of others is this is a discretionary licensing process where the City makes judgments about good moral character. There are 79 officials in the licensing department of the City of New York. Where are they going to look for guidance? They could, I think, look for guidance to a court-ordered injunction. I'm not sure they're going to pull the transcript from this argument, let alone a letter from the City to the Solicitor General's office for this. So we think we're entitled to that kind of meaningful effectual relief. We think on the merits, this case is actually quite straightforward because there is no historical analog for this kind of transportation restriction. As I suggested, if you look at the Second Militia Act passed by the Second Congress, they not only understood that you could transport your firearms from your home to a place where they could be lawfully discharged, but they required it of the members of the militia. If you look at the history and traditions of this country, there are very few laws that tried to do anything like this, and the few that tried to do this were invalidated by the courts. Kagan. Mr. Clement, as I understand New York's scheme, New York has two kinds of licenses. It has a premises license and it has a carry license. And you're attacking the premises license scheme on the ground that it doesn't allow you to carry. So why didn't you just attack the carry license scheme? If you want to carry, why didn't your clients get a carry license? Well, Justice Kagan, I think what my clients wanted in this lawsuit, and there are plenty of other lawsuits out there challenging carry restrictions, but they wanted the right to transport, not the right to carry. Well, transporting is a kind of carrying. You take your gun and it goes with you someplace. That's a kind of carrying. I will agree with that. I think it's also a kind of bearing, which is why I think this is such a straightforward  I think it's protected. All I'm asking is there's a premises scheme and a carrying scheme and your clients want to carry, which suggests that you should have brought a challenge to the carrying scheme if you thought that that was deficient. Again, with respect, Justice Kagan, my clients for years had, at least two of the three, had what the city for a while called a target license. And it didn't give them a full right to carry, but it did give them the right to transport their firearms to New Jersey and other places, probably would have allowed a second home, though I'm not sure that issue was squarely presented. My clients did not insist on getting a carry license, either under the before this lawsuit was filed or in this lawsuit. What they wanted is to restore rights to transport their firearms between and among places where they could be lawfully used. That's different from a license that says I get to have this firearm with me at all times, loaded, ready to go. What they wanted is to restore their right to transport firearms locked and unloaded between places where they could be lawfully used. That's what they asked for. That is what there is no historical analog for. And if I could emphasize, I think it would send a very important signal to the lower courts to say that when a regulation like this is inconsistent with text and has no analog in history or tradition, it is unconstitutional, full stop. The way the lower courts have interpreted Heller is like text, history, and tradition is a one-way ratchet. If text, history, and tradition sort of allow this practice, then they'll uphold the law. But if text, history, and tradition are to the contrary, then the courts proceed to a watered-down form of scrutiny that's heightened in name only. And I think this Court should reaffirm that text, history, and tradition essentially is the test and can be administered in a way that provides real protection for Second Amendment rights. Breyer. How do we go back for one second to the question presented? Does New York City's ban on transporting a licensed, locked, and unloaded handgun to a home or shooting range outside the city limits consistent with the Second Amendment? Now, you're going to hear in one minute there is no New York City ban on transporting a licensed, locked, and unloaded handgun to a home or other place outside. I think you'll hear that. Now, what will your very brief response? There's a question presented. They say there is no ban. And you say you can finish the question. That wasn't finished. Briefly. Thank you. Mr. Chief Justice, thank you. So my answer in a nutshell is Knox. My slightly longer answer is every time this Court confronts a post certiorari maneuver to try to moot a case, it almost by definition will try to take away from you the question presented. That's what happened in Knox. The question presented concerned the constitutionality of the special assessment. It didn't concern the adequacy of the refund notice, but yet this Court decided both. Thank you, Your Honor. Thank you, counsel. Mr. Wall. Mr. Chief Justice, and may it please the Court, one point on the merits and one on mootness. On the merits, text, history, and tradition all condemn New York's transport ban. Such bans have been rare and commonly struck down precisely because the right to keep arms and keeping bear arms must entail and has always entailed the ability of a law-abiding citizen to carry a firearm unloaded and locked from one lawful place to another. On mootness, Petitioners pointed below to economic harms from the violation of their constitutional rights. If they prevail here, the district court could award them damages, just like any other 1983 plaintiff. But they never asked for it. That's true, Justice Ginsburg, but there's a specific Federal rule on this, Federal Rule 54C, which says the prayer of relief binds on a default judgment, but it doesn't bind when you've litigated on the merits. And so the question for Article III purpose, now grant that there are questions about, prudential questions, about whether under the rules a court should allow them to inject the theory, and it would have to weigh that against the city's tardiness in changing its theory of the case as well, but for Article III purposes, the question under Mission Products and Knox is, is it impossible for a court to grant effectual relief? It is not. It is possible for a court to award them the damages they have sustained as a result of the city's conduct. Has the SG, the Solicitor General, ever asked this Court to allow such a late interjection of a damaging question to save the case from mootness? Mr. Clement said he was not aware of any such case. Are you? So I don't know of any case in which it's directly come up or we've weighed in on it. We obviously participated on the merits before the city's suggestion of mootness, and we felt compelled to explain to the Court our view on mootness. Didn't it come up in Alejandro? Is that the name of the case? And it was decided the other way, that the Court said, no, we're not going to allow that to happen. So I think, but that's in, first it's in 1926, so it predates the Federal Rule. So it predates 54C, which makes clear that the prayer for relief no longer binds. I also think the facts are somewhat distinguishable from here where they've got evidence in the record at the summary judgment stage of their economic harms. Now, to be sure, they're not focused on damages. What they wanted was to engage in the conduct. They wanted an injunction. I mean, not focused on damages is an understatement. They practically won't take damages. They've had every opportunity to say that they want damages, including today. And for whatever reason, Mr. Clement has, you know, basically said, this case is not about damages. That's not why we think it's not moot, and that's not what we want. So I heard Mr. Clement say, I'm happy to affirm that my clients want damages, but we don't think we need that lifeline from the Solicitor General. We think our other theories are good. We obviously disagree on some of those other theories. But I think the question under Knox and Mission Products is, is it impossible for a court to award damages? Here, there is evidence in the record of economic harm. If they get a declaration on the merits that they're right as a matter of the Second Amendment, there is no barrier to their receiving an award of damages from a court. Would you remind me what – where in the complaint they set forth damages? Sure. So I think the best examples are pages 32, 33, 35, 36 of the Joint Appendix, and then again at 52 through 54, 56, 57, and 59 to 61. Those are both the pleadings and the summary judgment affidavits, and they rely on two kinds of harm. One is the competitions they were not allowed to attend with the firearms, and the other is the cost of dues and membership fees to the in-city ranges, which I think implicitly they're suggesting are higher than the out-of-city ranges. Mr. Wall, I mean, they filed a complaint. They filed a motion for summary judgment. They briefed this case before the Second Circuit. They filed a cert petition. Then, in response to the suggestion of mootness, they filed another brief there, and in none of those places did they ask for damages. Damages have been injected into this case because of the Solicitor General in a, you know, very late-breaking three-page letter. Look, Justice Kagan, I'll certainly grant that there's a lot of post-grant maneuvering on both sides. The city has withdrawn its law, and the petitioners have come up with theories for why the case is not moot. As a matter of Article III, our view is that damages could change hands, and since it's not moot, I suppose you could also rest it on future consequences and say that the city's representations have come too late. It has an express scheme that allows you to consider these things. Well, I thought that in your brief, in your letter brief, you specifically rejected every other theory of why this case was live. We do think that the Court credits those kinds of assertions by governmental litigants. It did in defunus. The facts here are a little different. You have a scheme that expressly allows you to consider the conduct. You don't have any acknowledgment from the city that its former conduct was unconstitutional, and you have a representation that comes, as Mr. Clement said in his letter, at the 11th and a half hour. On those facts, could you say we're not going to take a look at the city's representation? You could. That is not our theory. Our theory is that money could change hands here, and they'd be entitled to that money if they prevailed on the merits. And what do you think of Mr. Clement's theory? I take it that you rejected Mr. Clement's theory about this continuous travel and stopping for coffee. I think it's a close call. On our view, that's a new controversy that arises from the new law, not the old controversy in the old law. But I think it's a hard question, and I understand his point that there would have been fighting over the terms of the injunction in the district court, or at least potentially there could have been. If I could turn to the merits for just a minute. Why isn't that good enough? If under the prior law, the plaintiffs would have sought relief that would allow them to take their firearms locked safely to a range and stop along the way for a cup of coffee or a bathroom break, and that that is still being denied under the ‑‑ if that's a proper reading. We'll ask New York about that, I'm sure. But if that's still a proper reading of their existing regulations, why isn't there a live controversy remaining? There would seem to be a delta of relief that's been denied them. Oh, I do think there is a live controversy potentially now about the meaning of this continuous and uninterrupted requirement. I just think that arises from the new law. And the premise, I think, we have doubts that it's ‑‑ But why doesn't it arise ‑‑ why isn't the dispute still alive from the old law if that's a form of relief they would have sought and is still, despite the new law, being denied them? Isn't that a classic definition of relief that was sought but now still, despite Herculean late‑breaking efforts to moot the case, still alive? If the court wanted to say that, I don't think it would harm the United States' interests. You're not aware of any precedent would foreclose that, and in fact, that's pretty much what Knox did, isn't it? Well, except that Knox was in a governmental litigate, so I think the presumption of voluntary cessation worked a little differently. But to Justice Gorsuch, just to go to the question, I think in the district court the fight was about whether they could do the thing at all. And now we have what strikes us as a different fight about the manner in which they can go, and the legal restriction is different. The legal restriction now is tied to the new law. But, no, I'm not aware of anything that the court has done. Sure, they've granted new relief. They have granted, but not total relief that the plaintiffs sought. You'd agree with that? I would agree with that. I think there is still a controversy about the manner in which they can go. That seems somewhat different to us from the controversy that was litigated below and that this Court agreed to hear. But I don't think there's any case that would keep the Court from going down that road. If I could turn to the merits for just a minute, I think all that the petitioners are asking for, and it's a fairly modest ask, is for the Court to reiterate what it said in Heller, that the lower courts have been correct in starting with text and history and tradition. But they have created, as Mr. Clement said, this sort of asymmetry where they find that history and tradition can give a thumbs-up to a law, but not a thumbs-down. I'm sorry. Can I go back to that question? In what other area, constitutional area, the First Amendment in particular, have we decided any case based solely on text, history, and tradition? This seems sort of a made-up new standard. And I thought Heller was very careful to say, we don't do that. We treat it like any other constitutional provision. And if I analogize this to the First Amendment, which is what Heller suggested we should do, this seems to be a time, place, and manner restriction. It may not pass any of the standards of scrutiny. But if you're looking at a First Amendment right to speak, it's never absolute. There are some words that are not protected. We're going to have a different fight about that at some point. Are there some weapons that are not protected, just like there might be some words that are not protected? We know under the First Amendment that there are time, place, and manner restrictions that a government can impose on the basis of safety and other things. On the basis of safety, you can't have a demonstration at will. You need a permit, and you have to have certain equipment and certain protections and certain things. So if I treat it in that way, we might have a fight about whether text history and tradition permits a time, manner, and place restriction of this type. But I don't know why that's a freestanding test. So two points, Justice Sotomayor. The first is, I understand manner restrictions. I understand the requirement that you carry the gun unloaded or that you do it in a container. But a ban is not a time, place, or manner restriction. And in determining which category it falls into and what's permissible, Heller said you start with text, history, and tradition. And the Court commonly does that. Even under the First Amendment with respect to categories, the Fourth Amendment for a search, the Seventh Amendment for the jury trial right, Heller just says you start here. And starting here, I think this is a straightforward case. There is no historical analog and a contrary tradition. Thank you. Thank you, counsel. Mr. Dearing. Mr. Chief Justice, and may it please the Court. Contrary to how they're presenting it now, Petitioners frame this case narrowly. They argue that a premises license, a premises license specifically, must allow certain limited transport of the licensed handgun to effectuate its possession and use in the premises. And they sought only injunctive and declaratory relief to require the city to allow that limited transport. And that narrow framing, in turn, has two implications now. First, the case is moot because changes in state and city law have given Petitioners everything they asked for and, indeed, more than that. Petitioners suggest these changes should be viewed skeptically, but it's a good thing and not a cause for concern when the government responds to litigation by resolving matters through the democratic process. The Solicitor General agrees that all the objections actually raised by Petitioners to mootness are unfounded, but suggests that the Court could proceed to the merits of the constitutional questions anyway because Petitioners might be, in the future, be able to add a new claim for damages that they have never asserted and still now only most reluctantly embrace. The Court has never adopted that kind of reasoning under Article III, and it should not begin with this case. And the second implication of the case's framing is that if the case weren't moot, the only question presented on the merits would be whether a premises license must, as an adjunct thereto, include the implied transport rights sought by Petitioners. Though Petitioners now invoke a general right to bear arms outside the home, a premises license is not addressed to that purpose. A premises license is instead issued for possession in a particular place. And Petitioners never challenge the separate New York license that is addressed to carrying weapons outside the home, which is the carry license. So those broad questions are not properly part of this case. Turning first to the issue of mootness, and I'll go straight to the question of coffee stops. There are two levels to this response. First is there is no dispute on that question. The city's enforcement, the governing standard is provided by State law here because the State enactment preempts local law. The continuous and uninterrupted language cited by my friend is not in the State law. The city acknowledges that, and the city's enforcement position is that coffee stops, bathroom breaks are entirely permissible under current law. Alitono, Jr. Well, let's go something beyond a coffee stop or a bathroom break. Suppose they had prevailed under and obtained a judgment that the old law was a violation of the Second Amendment. And suppose that after that, one of the plaintiffs had made a trip to a firing range in, let's say, New Jersey, and while there, decided to stop to visit his mother for a couple of hours to take care of a few things for her. Would there be any law that that would violate? That would be — I think — I'm not certain that it would. I think that would have to be a question now to be litigated under the State law, which has not been. Alitono, Jr. Well, no, no, no. We're back without the new laws, city or State. Would that have been — would that have been legal conduct? If that had happened prior to the changes in Congress. After a judgment that the old law was unconstitutional, prior to the enactment of any new law. I don't think it's at all clear, because that question — those kind of questions were never put at issue or litigated in the case, and so — You don't know what — you don't know whether there's any City law that that would violate? If there were a judgment that said that our law had been struck down — our former law had been struck down, I'm not aware of any City law that that would violate. So then why is this case moot? Because they didn't get all that they wanted. They wanted a declaration that the old law was unconstitutional, period, and what they have obtained as a result of the new City ordinance and the new State law is a firearm to a firing range outside of New York City, but it must be a direct trip. It can include an hour spent with your mother. I think that the answer is that Article III analysis is always focused on what the plaintiffs asked for, not speculation about what might have been an injunction here. And the only thing that was ever put at issue here, and you can see this by looking at the actual injunction that plaintiffs framed, was the permissible categories of destination — shooting ranges and second homes outside the City. Where is the injunction the plaintiffs framed? It's in a number of docket entries, and I don't remember the numbers offhand, but they're in the summary judgment in both motions for preliminary injunction, motions for summary judgment. Across several different docket numbers, injunctions were repeatedly proposed by the petitioners. They're basically verbatim identical. And what they say is they want an injunction restraining the City from enforcing its old rule in any manner that would prohibit or preclude plaintiffs from traveling to shooting ranges and second homes outside the City. And why wouldn't that include a nondirect trip? Your Honor, the issue of directness was never, ever litigated as part of this case. It was never in the complaint. We have no idea what the answer to that question might be if it had been litigated, but it is not what plaintiffs — the Article III analysis focuses on what plaintiffs asked for, and what they asked for dealt with permissible categories of destination, and that is more than fully addressed by the State and City laws. To turn now to the question of future consequences, we would — as I've said, the issue about coffee stops is an entirely feigned dispute. We would not undertake any prosecution or action now based on that or any other violation of the repealed law at this point. Is there any way in which any violation could prejudice a gun owner? Not that I can think of. The City is committed to closing the book on that old rule, and we're not going to take it into effect. Is there any way in which a finding of mootness would prejudice further options available to the Petitioners in this case, for example, seeking damages? I don't think so. I mean, they — it's possible they'd have a time bar on damages, but it depends — it would depend on the allegations they've made. They've never made any allegations related to damages, and I think we'd have to assess that based on the allegations they make. I think the other key point on future consequences is there's really no factual basis in the complaint for that. Mr. Clement, for the first time today, suggests that the complaint may have alluded to a possibility of past violations. It certainly did not allege that these Petitioners had violated the rule in the past. And the most important thing to know about those paragraphs of the complaint is that the Petitioners would have been — would have had their licenses renewed at least twice. By now, since this lawsuit is closed. Counsel, can I just make sure I understood you correctly earlier? I understood you to suggest that there will be no collateral consequences to anyone for violating the City's prior ban, any kind of collateral consequences. I think there's no basis to think there would be. No, I'm wondering — you're representing the City, and so I'm asking the City representative here that the City — there will be no collateral consequences from the City to individuals who violated the prior ban. Absolutely correct. There will be none. And you're making that representation to this Court? I'm making that representation to this Court on the record on behalf of the City of New York. I'm not going to — because I want to be careful for you and for society. You're not representing if they shot somebody with a gun, that you're not going to prosecute them for that? Correct. You're just not going to prosecute them for any violation of this old law? Of the repealed provisions of the law. That's right. If there were other potential acts, loaded guns, violent acts, that's different. But the repealed provisions of the old law, we will not prosecute anyone for. Well, I guess my question and some of the others went beyond prosecution. The question is whether they'd be prejudiced in any way. For example, with respect to qualifying for a premises license under the new law, would the fact of a violation of the prior law be used against them? It will not. It absolutely will not. And I think a deeper point is there is no reason to think there are such violations that Petitioners — there are such violations. If we refer back to the complaint, as I noted before, these Petitioners have been renewed — their licenses have been renewed twice, at least, since that complaint was filed. Do you have a way — do you have a way, Mr. Deering — I take it these licensing decisions are made by the office — an office in the New York Police Department. Do you have a way of communicating to that office what they are not permitted to do, given your representation? Absolutely. And we've — we've consulted that office. They're aware of this. We will communicate to them that no such consequences are — are to be imposed. And the event — in the extremely unlikely and I think not going to happen event that anyone thought that that might have happened, they should bring that to the attention of the law department and we'll review it and make sure that it's addressed. I do, though, want to just put a slightly finer point on the lack of factual basis in any event for the claim of future consequences. The Petitioners only now have made this allusion to their complaint. They've been renewed twice since then. The Court, of course, ordinarily presumes individuals follow the law. Even before this case, our — our practice was not to ask people to disclose past violations unless it had resulted in an arrest, summons, revocation, or something like that, and there is no suggestion that any Petitioner has had any of those events. Alito, do you think it's really fair for you at this point to look for specific allegations in the complaint to defeat a claim of mootness that the plaintiffs had no reason whatsoever to anticipate until after we granted certiorari and the city decided to try to moot this case? That just confirms that the plaintiffs got everything they asked for in this case. There's nothing — the issue of potential— Alito, how does that confirm that they got everything that they asked for? If you say, well, they didn't ask for nominal damages, they didn't ask for actual damages, they didn't specifically allege that they violated the old law, you really — they didn't allege that they wanted to make a nondirect trip? How could any plaintiff possibly have anticipated that until you took the quite extraordinary step of trying to moot the case after we grant it review? First, the State legislature has passed a new State law. Yes. And did the city have nothing to do with the enactment of that law? The city supported the law, as we do with many, many potential bills, and most of them go nowhere. The State legislature and the Governor made their own decisions — make their own decisions about what to enact, of course responsive to their statewide constituency. And that's what happened here. And that, by the way, is a good thing, not a bad one. The government should respond to litigation, should assess its laws or other — or political subdivisions' laws when they are challenged. And — Counsel, let's say I agree with you. I mean, I accept that. It's great when local governments respond to the constitutional constraints that are suggested by others in litigation. But it does seem a bit much, doesn't it, to fault plaintiffs for not having a specific damages requirement in their prayer for relief in a complaint that was framed years ago — this litigation, I think, has taken five-plus years — and that has become relevant only at this late stage after the city and the State have enacted a new law. Why isn't the prospect of allowing damages to be added to the complaint enough? In a 1983 action, damages are clearly available. The complaint, long ago as it was filed, did say that they sought all available relief, you know, typical prayer for relief. Rule 54 doesn't hold people to their prayers for relief. Why isn't there at least a fair prospect that a district court on remand would allow an amended complaint to seek actual damages? Well, two answers. One is that that's not how the Court has approached mootness questions. And two, a fair prospect is not enough to sustain a case under Article III. But — Fair prospect of relief isn't enough to sustain — Fair prospect, whether the claim is even in the case at all. That — whether the claim — a decision about whether the claim is in the case must precede a decision on the merits. That question is a jurisdictional one. And the Solicitor General is mistaken that it can be deferred until later, and the merits reach anyway. But the prior point, I think, is equally important, which is that it's not a matter of faulting the plaintiffs, but the plaintiffs chose the case they wanted to bring, as plaintiffs do. Demands for relief are taken very seriously. They're crafted carefully. And one of the reasons they're crafted carefully is that litigation — demands are meant to cause a defendant to consider whether to meet that demand. And in this case, this demand was crafted not just in the prayer for relief, but in numerous paragraphs of the complaint. The case was consistently litigated in accord with that structure of the complaint. And, in fact, even after mootness — the mootness question arose, the Petitioners in their — in their lengthy, comprehensive response never suggested — So you think it's totally irrelevant that the State has, at this late stage, sought to moot the case when we're assessing the prospect and the interests of the plaintiff in seeking damages? I think it is, because — because the reason demands are made in litigation is to prompt a defendant to decide whether to meet them, not to decide later, if they do meet them, to — to reinvent the case and make it something else. And the clearest example from this Court's cases — Do you agree that there at least be a fair prospect that a district court on remand might disagree with you and find that there is a reasonable excuse for the plaintiff's introduction of damages at this stage? I don't think so. I'm not aware of any case where anything like that has happened. In fact, consistent decisions from the courts of appeals have said — If we disagreed with you, then what? Still not enough, I think, because the prospect of adding a potential live claim is not enough to sustain an Article III case or controversy now and to allow the Court to reach the merits before that claim is in the case. And the clearest example is Alvarez v. Smith. That is a case that — where the complaint sought declaratory injunctive relief, just like the complaint here. But a slight — a difference, a significant difference. In that case, the plaintiffs had a motion pending in the district court. What do you do about the fact that that was pre-Rule 54 and the Federal Rule 54? Alvarez was not pre-Rule — Alvarez was about a decade ago. Alvarez is a little after — Oh, I'm sorry. Rule 54. That's Alejandro Reno, which is a different case. Rule 54, I think, is really a red herring here. Rule 54 is a question that governs the district court's remedial powers when a live controversy remains continuing before it. It says that the district court is not beholden necessarily to what is — categorically beholden to what is included in a prayer for relief and can craft appropriate remedies. But the Court and lower courts do not look to Rule 54 in determining questions under Article III. The right place to look is the complaint, the consistent litigation history in the courts below that determine what did the plaintiff ask for and has what they asked for been provided, and that has happened here. Mr. Doering, are the — are people in New York less safe now as a result of the enactment of the new city and State laws than they were before? We've — we — no, I don't think so. We made a judgment expressed by our police commissioner that — that it was consistent with public safety to repeal the prior rule and to move forward without it. Well, if they're not less safe, then what possible justification could there have been for the old rule, which you have abandoned? It was a reasonable — as we've outlined in our briefs, it was a reasonable implementation of the — of the State premises license, carry license division. I think — and we've explained that there was — was a verification benefit to the way that — that rule was set up. That verification benefit perhaps has not played out as much in practice as it had been predicted, and we believe the police can work harder and make sure the city stays safe. The Second Amendment permits the imposition of a restriction that has no public safety benefit? I think you have to look first to consider whether the type of restriction — how the restriction accords with the history under the Second Amendment before we answer that question. And so I think — I think the right place to start, and for our purposes, maybe starting with shooting ranges is the best. First key point is this must be viewed as an adjunct to the premises license. This is not just a general statute or generally applicable statute. It's an adjunct to the premises license. Well, if it's viewed in that way, could the city — would it be consistent with the Second Amendment for the city to prohibit any trip by a person holding a premises license to a firing range? I think that would be doubtful. And the reason the city went beyond what State law says about a premises license and authorized transport to shooting ranges in the city was because the city recognized that that training is — does intersect with and is important to effective use of the handgun in the home. So you are conceding — I take it doubtful means that it would be unconstitutional. You can tell me if you don't know the answer to that question. But if it — if that's what it means, you're conceding that the Second Amendment protects the possession of a firearm outside the home under at least some circumstances. I think what I'm conceding is that in the case of a premises license, the Second Amendment has something to say about what effective possession in the home means. And sometimes that may mean that you need to be able to — that a license holder needs to be able to undertake certain activities outside the home. Well, if the person is taking the firearm, the handgun, from the home to a firing range, the person is out on the streets of New York and if — unless a total ban on taking it to a firing range would be consistent with the Second Amendment, it follows that the Second Amendment under at least some circumstances protects the possession of a handgun outside the home. Isn't that correct? I think — I think that's a fair way to look at it, that — that — but from our perspective, the right question regarding a premises license is did the — did the rule impermissibly burden effective use of the handgun in the premises? In the same way that to get a gun to a premises, you have to get it somewhere outside — you know, purchase it somewhere outside your premises and bring it there, that certain things that happen outside the home may — may be integrally related to effective use of a handgun inside the home. But when you look at a premises license, and not speaking about the Second Amendment at large or writ large, but the premises license specifically, the only proper lens to look at the question through is whether the restriction impinges on effective use of the handgun in the home. And with regard to training, we have two — two related reasons why it doesn't. The first is to look to historical restrictions, which were not themselves directed at premises licenses, but are illuminating. And historically, the location where people were permitted to train was — was fairly extensively restricted, provided that opportunities to train remained available. And we — that's the principle we distill from history. And when you apply it to the premises license here, what our — the conclusion is that the ability to train locally in a circumstance where market forces are allowed to operate to determine how many facilities are present, where there's no indication that supply was insufficient to meet demand, and where the Petitioners here actually in their summary judgment affidavits never even said they wished to engage in any form of regular training outside the city. All they said is they wanted to go to shooting competition — regional shooting competitions out of the city. That on this record, the former restriction or the former rule implementing the premises license to allow training locally meets Second Amendment requirements. Alito, how should the — what methodology should the courts use in approaching Second Amendment questions? If they conclude that texts in history protect a — the texts in history of the Second Amendment protect a particular activity, is that the end of the question, or do they then go on and apply some level of scrutiny? I think — I think first you look — we look to history and determine whether history answers the question one way or the other, whether it's constitutional or unconstitutional. And in a significant number of cases, history will not speak with one voice or conclusively on that subject. And then the right step is to move on to an assessment of justification and fit under a means and scrutiny approach. But if history says this is protected, then that's the end of the question. There's no resort to some level of scrutiny. If history conclusively shows that the restriction is impermissible, then I — as in Heller. Heller's an example of that phenomenon. Heller determined without consulting means and scrutiny that the law in question sort of went to the core of and destroyed, in essence, the Second Amendment right and therefore was — and more severe than any historical, any analogous or prior law in its degree of burden on the Second Amendment right. I don't know what you're supposed to do there because you're correctly stating the views of some judges. Right. And some judges had an opposite view. I'm aware — I'm aware of that. That's correct. Our view is that history can answer some questions pretty directly. And in other many — in other — in a significant number of cases, history doesn't speak so clearly. And that the most reliable method of answering the question in those cases is means and scrutiny. One problem with the prior regulation, if you wanted to have a gun in your second home, you had to buy a second gun. And what public safety or any other reasonable end is served by saying you have to have two guns instead of one, and one of those guns has to be maintained in a place that is often unoccupied and therefore more vulnerable to theft? I think that the question on second homes, their Petitioners have identified a difficult application of our former rule that wasn't really contemplated when the rule was adopted. I still think, though, if you look historically — and the right way to answer a question about whether it was unconstitutional is to ask whether there had been some historical tradition of enabling individuals to use the same handgun to protect two different homes. Of course, our rule never spoke to the question whether an individual could have a handgun in a jurisdiction that's something completely that we don't speak to, we could never speak to. And when you look at the question about what happened historically, there have been incidental burdens that would have burdened similarly that kind of conduct in the past. And this is why these things are difficult for you. All right? I understand that. But in Massachusetts, historically, all the guns and ammunition were stored in a central place at night. I believe at the time of the revolution, and not in anybody's home. And do we have a different law for Massachusetts? I guess not. What history do we look to? And you did at one point where someone said, I am a policeman. I happen to notice there's a gun next to this person in the car who stopped at the stoplight. I say, sir, what are you doing with this gun? He says, I am going to a firing range. Oh, I see. You're going to test it. Where is it? Now, if he says it's in Brooklyn, I can find it. If he says it's somewhere 14 miles northwest of Utica in the Adirondacks, I have a harder time. And I don't know who to believe. And so it's tough. So there are more guns in New York. What happened to that? That argument. That argument is the argument that is presented on the record of the detective affidavit. Sorry. We, of course, took a close look at that question, and the police commissioner determined that the rule could be repealed without a negative impact on public safety. I do think the police will have to work harder to verify what's happening in those situations. But we are confident that they can do it, and they will do it successfully. Why will they have to work harder? Somebody who lives in Midtown is stopped with a gun, and the officer says, where are you going? I'm going to a firing range in Jersey City, which is right across the river. That's tougher than I'm going to a firing range in Staten Island. And I think three of your seven ranges are in Staten Island. Am I right? Two are in Staten Island. Two are in Staten Island. I think it is a little bit tougher, but, of course, the person may not say Jersey City. Somebody who lives in the north Bronx says, I'm going across the border to Westchester County. That's tougher for you to look into than, yes, I'm going all the way to Staten Island. Well, still what happens in Staten Island is within the police department's jurisdiction, they have access to records, immediate access to records. They have that range is subject to the requirement to maintain a roster of individuals to use it. I agree with you that it's not, that it is enforceable as to Jersey City or as to Westchester, and that's part of the reason the city is determined to change the rule, even ignoring the fact that the State came in and preempted it. But I do think it is not, it is more difficult, and that the judgment previously was that with respect to premises licensees, of course, not a carry license, which is not at issue in this case, has never been challenged. The target license that Mr. Clement referred to was understood to be a kind of carry license, and if that was the heart of the complaint, the claim should have been that the city needs to reinstate that carry license. That was not the claim in this case. The claim in this case was specifically articulated by the Petitioners that they have a premises license. This is about the scope of a premises license. And the claim made, framed by the Petitioners most clearly in their summary judgment papers at page 6, was that the relief sought here is necessary to allow the full exercise of the right of defense of hearth and home in the home. They accepted the premises license framing, and the entire case has been litigated in that way. Counsel, I just want to circle back to the direct and continuous travel requirement of the current rule and Justice Alito's question about visiting your mother. Is it now the city's position that any reasonable stops are permissible? That is our enforcement. Reasonably necessary stops in the course of travel are permissible. Reasonably necessary. Now, does that include stopping to visit your mother or use a cup of coffee? I mean, I'm not sure a cup of coffee. Is a cup of coffee reasonably necessary? Well, it probably depends who you ask. But the police department has affirmed and we have made clear that the enforcement position is that a stop for a cup of coffee is not a problem. So that's reasonably necessary. So what's going to qualify? I'm just a little unclear about that. Well, the controlling standard here, I'm giving you the enforcement position of the police department on the questions we have considered. But the controlling standard here, I should hasten to add, is provided by state law. We do not offer definitive, cannot offer a definitive construction of that law. And I think the question about what that state law means is one that's going to need to be litigated probably in state courts. But before there's any dispute here ripe for constitutional adjudication, the meaning of that law is going to have to be determined. So we have no representations to us as to what is direct and continuous, other than coffee is okay. Coffee, what I know, what I can represent, because it's come up before, coffee, restrooms, food, gas, the kinds of things that you ordinarily would stop for in the course of travel. I hadn't considered the mother or mother-in-law example before. I think that's going to need to play out in the state courts. The more important point here, though, is that none of those issues were ever part of this controversy. This controversy was about two things. As repeatedly emphasized by Petitioners throughout the law. Roberts. I understand that, but you're asking us to say that there is no controversy now. So I'm trying to just nail down exactly what is the delta, if any, remaining in the relief that might have been sought and the relief you've provided. Well, this is all, I guess, in short what I'm saying is, Mr. Chief Justice may answer this, in short what I'm saying is this is not relief that was ever sought. There may be a controversy here, but it's a new controversy. It would need to be litigated in a new case. And the relief, the speculation about what an injunction theoretically could have included is not the way this Court analyzes questions under Article III. Thank you. Thank you, counsel. Three minutes, Mr. Clement. Thank you, Mr. Chief Justice. Just a few points in rebuttal. First of all, Justice Kagan, we never got to the point of a proposed injunction in this case. We didn't exactly succeed really well under the current Second Circuit law, so we never got to the point of proposing an injunction. The only thing my friend is referring to are some allusions to the kind of relief we wanted in a summary judgment motion. If we had gotten to that point, we would have wanted clarity, the kind of clarity that a Federal court applying the Second Amendment can provide. You don't have to depend on a city's representation about State law. Mr. Clement, your complaint from relief states it. An order preliminarily and permanently enjoining the defendants, I could skip out whoever else, who receive actual notice of the injunction from enforcing this prohibition from traveling beyond the borders of the City of New York to attend a gun rage shooting competition or to use a lawfully possessed and licensed firearm for the purposes of defending one's home, person, or property. And you ask for declaratory relief with those same words. That's right, Justice Sotomayor. I don't think we would have been tethered to those in a proposed injunction. But if we're going to go to the complaint, I think we should look at page 40, paragraph 41, at Joint Appendix 36, where we ask for, quote, unrestricted access to gun ranges and second homes. Unrestricted. I don't think at this late stage we are still being offered unrestricted access. And I think it's important to understand. Sotomayor, let's stop. Justice Alito said stopping at your mother's. When you say unrestricted, does that mean I can carry my gun for three days? Do you think that a court actually would have crafted an injunction at all with hypothetical situations? It would have said you can carry your gun to the range, and then would have left for further litigation specific applications of that general rule. I don't think so, Your Honor. Unless you had. I think what would have happened is the parties would have had their proposed injunctions, there would have been a huge delta between them, and then we would have disputed the same kind of questions that are still being disputed here. But we wouldn't have to rely on the city's representation about State law because we could have an injunction that enforced the Second Amendment. I think it's important to understand how State law and city law work together. So you want us to create the law. So you could proceed with the other points you intended to? I'd be delighted to, Your Honor. I think the way that city law and State law work together here is all the State law says is we're going to allow your transport if it's direct. It doesn't otherwise specify what's direct. The city took it on itself in Section 7 of the new regs to tell you what they, at least at that point, thought was sufficiently direct, which is continuous and uninterrupted. Now, they're now making representations that the reg doesn't mean what it seems to mean and the like, and I would say that my clients shouldn't have to rely on those representations. They should get that in writing in an injunction that would be enforceable. That would be effectual relief. Again, I think the damages point was not our principal claim here, but let's think about in real time what would have happened is as soon as we filed the lawsuit, the city would have turned around, dropped its case entirely, and then admitted to the court that it served no public safety purpose. Then I think my clients, who for years had tried to comply with the law and restricted where they wanted to go, would have immediately sued for damages. I don't think they should lose that right just because the city's maneuvering happened post certiorari. Thank you, Your Honor. Counsel, the case is submitted.